United States District Court
Southern District of Texas
**ENTERED**
July 09, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BRANDON WILLIAMS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-CV-00455 |
| | § | |
| **DOUGLAS A. COLLINS, SECRETARY** | § | |
| **OF THE DEPARTMENT** | § | |
| **OF VETERAN AFFAIRS,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandon Williams worked in a temporary job as a social worker at the Department of Veterans Affairs Vet Center in Spring, Texas ("Spring Vet Center" or "Center"). In that role, he provided group, individual, and marital counseling to veterans.

While Williams was working there, Kodie Henscheid, a female licensed counselor at the Spring Vet Center, accepted another position and left the Spring Vet Center. The Spring Vet Center and Dr. Stan E. Huff, the Associate District Director for Clinical Services, began looking for a replacement. Williams wanted Henscheid's old job, but he did not have a license. And throughout the search process, Dr. Huff emphasized that he wanted a licensed counselor. Licensing was not the only consideration, however. Dr. Huff repeatedly stated that he wanted to hire a woman because the office no longer had a female clinician.

Despite Dr. Huff's stated gender preference, he initially offered the job to a licensed male counselor. After that counselor declined, the Center hired Megan Myers, a licensed female counselor, to replace Henscheid.

Williams sued Defendant Douglas A. Collins, Secretary of the United States Department of Veterans Affairs,[1] alleging sex discrimination under Title VII. (Dkt. No. 1). Collins now moves for summary judgment, arguing that Williams was not qualified for the position. (Dkt. No. 23).

Before the Court is Defendant's Motion for Summary Judgment. (*Id.*). For the reasons below, the Court **DENIES** the Motion.

## I.    BACKGROUND[2]

Plaintiff Brandon Williams is a United States Army veteran. (Dkt. No. 25-1 at 1). He saw combat and, as a result, was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and received six months of mental-health treatment. (*Id.* at 2). After his condition improved, Williams sought to help other veterans. (*Id.*). So, he enrolled at Stephen F. Austin University and earned a Master of Social Work degree. (*Id.*).

---

[1] Williams's Complaint names the Honorable Denis Richard McDonough, then-Secretary of the Department of Veterans Affairs, as the defendant. (Dkt. No. 1). But in February 2025, the Honorable Douglas A. Collins became the new Secretary of the Department of Veterans Affairs. *See Secretary of Veterans Affairs*, U.S. Dep't of Veterans Affs., https://department.va.gov/administrations-and-offices/secretary/ [https://perma.cc/7ZPW-KTPG] (Feb. 5, 2025). Accordingly, Collins is automatically substituted as the proper defendant in this suit. Fed. R. Civ. P. 25(d) ("[An] officer's successor is automatically substituted as a party."). The Court hereby directs the Clerk to update the docket sheet and case caption to reflect this change.

[2] Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

In July 2021, after graduating, Williams accepted a 13-month temporary position at the Spring Vet Center. (*Id.*); (Dkt. No. 23-2 at 4, 7). These centers typically employ therapists with various credentials "under the umbrella title of Readjustment Counselor." (Dkt. No. 23-1 at 1). This term includes four general disciplines: (1) psychologists; (2) licensed professional mental health counselors; (3) marriage and family therapists; and (4) social workers. (*Id.*). Each discipline provides clinical therapy and counseling services to veterans, but each has distinct licensing and qualification standards. (*Id.*).

Williams was hired as a social worker at the GS-9 level[3] to temporarily fill in for Cedric Hill, a GS-11 social worker called to active duty. (Dkt. No. 23-4) ("REASON FOR TEMPORARY APPOINTMENT TO COVER FOR MILITARY LEAVE"); (Dkt. No. 25-1 at 2); (Dkt. No. 23-2 at 7); (*see also* Dkt. No. 25-3 at 2). In this role, Williams provided group, individual, and marital counseling to veterans. (Dkt. No. 25-1 at 3). He reported directly to Dr. Stan E. Huff, the Associate District Director for Clinical Services for Readjustment Counseling Service District 3 in St. Louis, Missouri. (Dkt. No. 23-2 at 7); (Dkt. No. 23-3 at 2).

Four months later, in November 2021, Hill returned from deployment. (Dkt. No. 23-2 at 7). Around the same time, Kodie Henscheid—a GS-11 licensed female counselor—

---

[3] The General Schedule ("GS") is the federal government's primary pay system for white-collar employees. *See General Schedule*, U.S. Off. of Pers. Mgmt., https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule [https://perma.cc/L6NH-HDWN] (last visited May 20, 2025). It includes 15 grades, from GS-1 (lowest) to GS-15 (highest), reflecting increasing levels of job difficulty, responsibility, and required qualifications. *Id.* For example, a GS-2 position generally requires only a high school diploma, a GS-5 typically requires a Bachelor's degree, and a GS-9 a Master's degree. *Id.*

3

informed Dr. Huff that she was seeking a remote, non-clinical GS-12 position that would allow her to work from home. (*Id.*). Once Henscheid notified Dr. Huff of her plans, Dr. Huff and others at the Center began looking for her replacement. (*See id.* at 7–8).

Williams saw an opening. (*See* Dkt. No. 25-1 at 3). Hill had returned, (Dkt. No. 23-2 at 7), and Williams's temporary contract would expire in about nine months, (Dkt. No. 25-1 at 3). He asked Dr. Huff to consider him for the vacancy. (*Id.*) ("Since I was employed on [a temporary] contract that expired in August [2022], I saw this [as] a fantastic opportunity to stay in the VA and help veterans, and helping veterans was the reason I had become a social worker in the first place."). Dr. Huff initially "did nothing to dissuade [Williams] from the idea that [he] would be able to apply for the position." (*Id.*). But Williams remained an unlicensed GS-9, (Dkt. No. 23-4), and Dr. Huff and the Spring Vet Center were allegedly seeking a fully-licensed GS-11 hire, (Dkt. No. 23-2 at 8).

Williams contends that he was nonetheless "fully qualified to take the position." (Dkt. No. 25-1 at 4). In his view, the only significant "difference between a GS-9 and a GS-11 on a daily basis in the job relates to the concept of 'supervision.'" (*Id.* at 5). GS-11 counselors must be licensed and may sign their own treatment notes. (*Id.*); (Dkt. No. 23-3 at 9); (Dkt. No. 23-6 at 9). GS-9 counselors, by contrast, are unlicensed and must have a licensed supervisor review and sign off on their notes. (Dkt. No. 25-1 at 5); (Dkt. No. 23-6 at 1) (describing GS-9 role as one where the individual is closely supervised and serving "as an entry level unlicensed" counselor). Williams argues that his GS-9 status was sufficient to permanently replace a GS-11 employee because his oversight was limited to

4

providing his clinical notes to Dr. Huff, who signed them "without discussion." (Dkt. No. 25-1 at 6).

He also emphasizes that similar counselor positions are "routinely" posted at either the GS-9 or GS-11 level. (*Id.* at 4). And although Williams was employed at the GS-9 level, (Dkt. No. 23-4), he had "extensive experience" leading group sessions—a major component of the vacated role, (Dkt. No. 25-1 at 5). Moreover, Williams assumed many of Henscheid's patients without issue between her departure and Myers's hiring.[4] (*Id.*).

Licensure, however, was not the only obstacle. Henscheid was the Center's only female clinician. (Dkt. No. 23-2 at 8). Dr. Huff believed that hiring a woman would help female veterans feel safer and more comfortable discussing sensitive topics.[5] (*Id.*). Multiple people stated that Dr. Huff repeatedly expressed a preference for hiring a woman because the office lacked a female clinician. (Dkt. No. 25-1 at 3); (Dkt. No. 25-3 at 3); (Dkt. No. 25-4 at 3); (Dkt. No. 25-5 at 3).

Even so, Dr. Huff first offered the job to Larry Bell, a male candidate, who declined.[6] (Dkt. No. 23-2 at 8). He then offered the position to Megan Myers, a licensed GS-11 marriage and family therapist who had previously expressed interest in working

---

[4] Henscheid left the Spring Vet Center on January 29, 2022. (Dkt. No. 23-2 at 7) ("Her final day at the Spring Vet Center was 29 January 2022."); (Dkt. No. 23-10) (documenting her departure effective January 30, 2022). Myers was hired approximately five months later. (Dkt. No. 23-11) (reflecting reassignment to Spring Vet Center as of June 5, 2022); (Dkt. No. 23-12) (June 6, 2022, job-offer email to Myers).

[5] Indeed, after Henscheid left, several female clients discontinued services. (*Id.*).

[6] Bell declined because he did not want to relocate his family, would have had a longer commute, and would not have had an increased salary. (Dkt. No. 23-2 at 8); (Dkt. No. 23-7 at 1).

5

for a vet center. (*Id.*). After some discussion, (*id.*), in June 2022, the Spring Vet Center hired Myers to replace Henscheid, (*see* Dkt. Nos. 23-11, 23-12).

The Center terminated Williams shortly after. (Dkt. No. 23-13) (termination effective July 8, 2022). Hill was back from deployment, and Williams's contract—created solely to cover Hill's absence, (Dkt. No. 23-2 at 7); (Dkt. No. 23-4); (Dkt. No. 25-1 at 2)—had expired, (Dkt. No. 23-2 at 4); (*but see* Dkt. No. 25-1) (stating Williams's contract permitted him to serve "up to August 14, 2022"). The Center explained that "[t]here is no longer a substantiated need for this over hire position." (Dkt. No. 23-14) ("I am recommending that [Williams's] appointment be terminated due to the return of the fulltime staff member returning from extended leave in which the over hire (NTE) position [he is] filling was created to provide coverage for."); (Dkt. No. 23-2 at 4).

Williams stated that not being selected for Henscheid's role injured him "emotionally and financially." (Dkt. No. 25-1 at 7). Williams explained that the "injustice" of not being allowed to apply for the position "caused [him] great emotional pain," "triggered [his] pre-existing PTSD," and resulted in high blood pressure, a lack of sleep, and anxiety-induced Gastroesophageal Reflux Disease ("GERD"). (*Id.*). Williams remained unemployed for two months and received less pay at his new job. (*Id.*).

On February 7, 2023, Williams sued Defendant Douglas A. Collins, the Secretary of the United States Department of Veterans Affairs, for sex discrimination under Title VII. (Dkt. No. 1). After discovery, Collins now moves for summary judgment. (Dkt. No. 23). Williams has responded, (Dkt. No. 24), and Collins has replied, (Dkt. No. 26).

## II.      LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v.*

7

*Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### III.   DISCUSSION

Collins moves for summary judgment on Williams's Title VII sex-discrimination claim. (*See* Dkt. No. 23 at 7–13). A plaintiff may establish a prima facie case of discrimination under Title VII using either direct or circumstantial evidence. *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 475 (5th Cir. 2015) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)), *as revised* (Feb. 3, 2015). "If the plaintiff presents only circumstantial evidence," the claim proceeds under the three-step *McDonnell Douglas* framework. *Id.* (quoting *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994)). "If, however, the plaintiff presents direct evidence of discrimination,

8

'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Id.* (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). Thus, "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985)).

Williams contends that he has presented direct evidence of sex discrimination here. (Dkt. No. 24 at 14–17). Collins disagrees and argues that, even under the direct-evidence framework, Dr. Huff and the Spring Vet Center would not have hired Williams due to his lack of qualifications. (Dkt. No. 26 at 1–2).

The Court first addresses whether Williams has produced direct evidence of discrimination and then considers Collins's qualifications argument.

### A. DIRECT-EVIDENCE ARGUMENT

"[D]irect evidence is rare." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (quoting *Portis*, 34 F.3d at 328). It includes "evidence which, if believed, proves the fact without inference or presumption." *Id.* (quoting *Brown*, 989 F.2d at 861). A statement is direct evidence of discrimination if it "shows 'on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action.'" *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)).

For his direct evidence, Williams cites testimony from multiple employees—including himself, Cedric Hill, Brian Auker, and Jeanna Spiller—who claim that Dr. Huff repeatedly stated his desire to hire a woman for the open counselor position. (Dkt. No. 25-1 at 3); (Dkt. No. 25-3 at 3); (Dkt. No. 25-4 at 3); (Dkt. No. 25-5 at 3); (Dkt. No. 24 at 16). Williams testified that "Dr. Huff made it known to [Williams] and the entire office staff that he was only interested in hiring a female counselor." (Dkt. No. 25-1 at 3). While Hill did not "witness" the statements "firsthand," he swore he heard "several times that Dr. Huff was looking for a female to hire" because "the office [did] not have one." (Dkt. No. 25-3 at 3). Auker stated that "Dr. Huff made it well known that he wanted to hire a female," and that he expressed this view "on several occasions." (Dkt. No. 25-4 at 3). Spiller similarly affirmed that "Dr. Huff and his boss were interested in filling the open [full-time] position with a female." (Dkt. No. 25-5 at 3).

Dr. Huff himself acknowledged "that hiring a female clinician to fill Ms. Henscheid's position offered an additional benefit." (Dkt. No. 23-2 at 8). And Defendant admitted that "being female was considered when placing Ms. [Myers] in the job in question." (Dkt. No. 25-2 at 4).

To assess whether comments like these amount to direct evidence of discrimination, the Fifth Circuit considers four factors: (1) whether the statements relate to a "protected characteristic"; (2) whether they were made "proximate in time to the challenged employment decision"; (3) whether they were "made by an individual with authority over the challenged employment decision"; and (4) whether the statements are "related to the challenged employment decision." *Wilkinson v. Pinnacle Lodging, LLC*, No.

10

22-30556, 2023 WL 6518142, at *3 (5th Cir. Oct. 5, 2023) (per curiam) (quoting *Etienne*, 778 F.3d at 476). "Comments that do not meet these [four] criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (footnotes omitted) (first quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000); and then citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993)). "Thus, the inquiry before a district court is whether 'the direct evidence, *truly* standing alone, is sufficient to support [a] conclusion that a nexus exists between the protected activity and the adverse employment action.'" *Pete v. City of Houston*, 719 F.App'x 334, 338 (5th Cir. 2018) (per curiam) (emphasis in original) (quoting *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 416 (5th Cir. 2003)).

Based on the summary-judgment record, Williams has created a fact question under the direct-evidence framework. *Green v. Miss. Dep't of Transp.*, No. 3:19-CV-00519, 2020 WL 6216762, at *5 (S.D. Miss. Oct. 22, 2020) ("Green has created a question of fact under the direct-evidence approach.").

First, Dr. Huff's statements relate to Williams's protected characteristic—sex—because Dr. Huff stated that he wanted to hire a woman for the position. (*See* Dkt. No. 25-1 at 3); (Dkt. No. 25-3 at 3); (Dkt. No. 25-4 at 3); (Dkt. No. 25-5 at 3); (Dkt. No. 23-2 at 8).

Second, the statements were made in close, temporal proximity to the decision. *See Etienne*, 778 F.3d at 476–77 (holding that repeated comments reflecting an "ongoing practice" satisfied the proximity requirement at the summary-judgment stage).

11

Third, Dr. Huff was directly involved in hiring Myers. (*See* Dkt. No. 23-2 at 2, 5–6, 8); (Dkt. No. 23-3 at 3); (*see also* Dkt. No. 25-2 at 5) (listing Dr. Huff as among those who participated in hiring Myers or declining to hire Williams); (Dkt. No. 25-3 at 3); (Dkt. No. 25-4 at 3). Thus, his statements were "made by an individual with authority over the challenged employment decision." *See, e.g.*, *McKibban v. MMK Holdings, L.P.*, No. 5:23-CV-00182, 2024 WL 4052739, at *7 (W.D. Tex. Aug. 15, 2024) (finding two of plaintiff's supervisors had "authority over the challenged employment decision" even though neither was the "ultimate decisionmaker" when both supervisors recommended that the plaintiff be terminated to the "ultimate manager"), *report and recommendation adopted*, No. 5:23-CV-00182, 2024 WL 4047163 (W.D. Tex. Sept. 4, 2024); *but see also Clark*, 952 F.3d at 581 (finding no direct evidence of discrimination where the speaker "was not the ultimate decisionmaker regarding termination").

And fourth, Dr. Huff's statements are related to the challenged employment decision—who to hire for Henscheid's old job. *See Etienne*, 778 F.3d at 476

If believed, Dr. Huff's repeated comments show that sex was at least one basis for deciding who would succeed Henscheid as a counselor. *Herster*, 887 F.3d at 185 (holding statements must "show[] 'on [their] face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action . . . .'" (quoting *Jones*, 427 F.3d at 993)). That alone is sufficient to raise a fact question as to whether they are direct evidence of sex discrimination. *See Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996) (holding employer's admission that he did not want to hire older workers "would allow a reasonable juror to conclude" that he had discriminated against plaintiff

12

because of his age); *Jones*, 427 F.3d at 990–93 (finding remarks like "I've been told not to hire too many blacks" to be direct evidence of racial discrimination); *see also Robertson v. Nat'l Smart Healthcare Servs., Inc.*, No. 4:12-CV-00673, 2013 WL 12140299, at *10 (S.D. Tex. Mar. 13, 2013) ("[Plaintiff] made her prima facie showing by submitting [direct] evidence that, if believed, would tend to show that race was a factor in the decision to terminate her employment.").

### B.  QUALIFICATION ARGUMENT

Despite this direct evidence, Collins argues that Dr. Huff and the Spring Vet Center would not have hired Williams regardless of his sex because he lacked the necessary qualifications. (Dkt. No. 26 at 1–2). Specifically, Collins points to the fact that Williams was not a licensed counselor. (*Id.*); (Dkt. No. 23 at 10–11).

The Court disagrees. Although he held a GS-9 position, Williams managed a "substantial portion" of Henscheid's caseload after her departure. (Dkt. No. 25-1 at 6). He handled his responsibilities effectively, with Dr. Huff signing his clinical notes "without any discussion." (*Id.*). Moreover, nearly half of the veterans Henscheid served participated in group sessions—an area in which Williams had "extensive experience" and Myers had none. (*Id.* at 5). Williams also notes that similar vet-center counselor positions are "routinely authorized" at either the GS-9 or GS-11 level. (*Id.* at 4).

That said, the Court acknowledges that Dr. Huff indicated a desire to fill the position with a licensed counselor at the GS-11 level, (Dkt. No. 23-3 at 8), and an individual can only rise to GS-11 level if he or she is licensed, (*id.* at 9). However, when Williams approached Dr. Huff about the position, Dr. Huff "did nothing to dissuade

13

[Williams] from the idea that [he] would be able to apply for the position." (Dkt. No. 25-1 at 3). The Court also understands that Dr. Huff offered the job to Larry Bell, a male licensed counselor at the GS-11 level. (Dkt. No. 23-2 at 8); (Dkt. No. 23-7 at 1). But viewing the evidence in the light most favorable to Williams, *see Carr*, 866 F.3d at 601, the Court finds that there is a genuine issue of material fact as to whether Williams's qualifications, regardless of sex, were the true reason he was not hired. Summary judgment is therefore inappropriate.

## IV.   CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment, (Dkt. No. 23), is **DENIED**.

It is SO ORDERED.

Signed on July 8, 2025.

_____<br>
**DREW B. TIPTON**<br>
**UNITED STATES DISTRICT JUDGE**